```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Gregory B. Monaco, *etc., et ano.*,
                                              CV-98-3386 (CPS)
                    Plaintiffs,

    - against -                               MEMORANDUM OPINION
                                              AND ORDER
Sharon Carpinello, *etc., et ano.*,

                    Defendants.

----------------------------------------X
```

SIFTON, Senior Judge,

    Plaintiffs Gregory B. Monaco, on behalf of himself and similarly situated individuals facing civil commitment, and the Mental Disability Law Clinic of Touro Law Center ("the Clinic") bring this class action for declaratory and injunctive relief against the following defendants: Sharon Carpinello, in her official capacity as Acting Commissioner of the New York State Office of Mental Health ("OMH"); Catherine Cahill, in her official capacity as Justice of the East Hampton Town Justice Court, on behalf of herself and all other local criminal court judges in New York State; Benjamin Chu, in his official capacity as the Director of the New York City Health and Hospitals Corporation ("HHC"); Mark Sedler, in his official capacity as Chairman of the Department of Psychiatry at University Hospital of the State University at Stony Brook; Kenneth Skodnek, in his official capacity as Chairman of Psychiatry at Nassau University

Medical Center ("NUMC"); Arnold Licht, in his official capacity as Director of the psychiatric unit of Long Island College Hospital; Alfred Tisch, in his official capacity of Sheriff of Suffolk County; and Martin Horn, in his official capacity of Commissioner of the New York City Department of Corrections.[1]

Plaintiffs allege violations of the Fourth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, as well as state law claims for false imprisonment negligence, and medical malpractice. As amended, the complaint contains two major components: 1) a challenge to the constitutionality of the practices of Cahill, Horn, and Tisch in unnecessarily keeping confined individuals found incompetent to stand trial for minor felonies and misdemeanors and those awaiting such a determination; 2) a challenge to the constitutionality of the procedures used by Chu, Sedler, Skodnek, and Licht to involuntarily hospitalize individuals deemed mentally ill.

On June 1, 2006 this Court preliminarily approved a settlement between plaintiffs and HHC. Now before this Court is

---

[1] In a previous decision, this Court dismissed the claims against Licht and granted summary judgment in favor of four other defendants. In their fifth amended complaint, plaintiffs reasserted these claims against these defendants in order to preserve their right to appeal this Court's judgment. *See* 6 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 at 560 (2d ed. 1990).

HHC's motion, joined by plaintiffs, to provide notice by publication.

## Discussion

Familiarity with the underlying facts of this case is presumed.

In this Court's order of June 1, 2006, the settling parties were informed that they had "not addressed notice to those potential class members who were previously improperly evaluated for civil commitment" and that "[i]f these individuals can be easily identified, for example, through hospital records, they must be given individual notice." It was further ordered that the parties "are directed either to identify and notify each potential class member who was previously improperly evaluated for civil commitment or to file an affidavit explaining why the identities and addresses of the individuals cannot be easily ascertained." Should those names and addresses be too difficult to ascertain, "notice by publication in both Spanish and English newspapers [would] suffice."

The parties have submitted an affidavit from the Senior Assistant Vice President of HHC explaining why they cannot comply with the individual notice. There are five HHC hospitals relevant to this action. Three of the hospitals maintain no record of the

admission status of psychiatric patients, while one of the hospitals only retains such a log for the duration of the patient's stay. For these four hospitals, the only way to determine which patients had been involuntarily committed would be to manually pull and review all patient records for the relevant period to determine which patients were involuntarily committed (starting in December 2001); there are more than 35,000 relevant admissions. For the fifth hospital, Elmhust, the identities of individuals involuntarily committed are readily ascertainable from the records but identifying the addresses of these patients would require the hospital to manually pull records, at least a third of which have been sent to storage; there were at least 6,000 involuntary admissions during the relevant period. According to HHC, retrieving and reviewing all these records would take approximately a year and cost over $250,000 in labor ($30,000) and retrieval ($225,000), while the mailing itself would cost approximately $9,000 more. Second, HHC maintains that even if they were to complete the search, many of the addresses would be incorrect since the patient population at these hospitals tends to be very mobile; this is particularly true of the psychiatric patient population. Third, HHC is concerned that even if were able to identify the class members and their addresses, there is a "serious question of whether it

would violate patients' privacy" to send notices to their homes, since many live with other people who may not be aware of their psychiatric history. Instead, HHC proposes placing notice in two publications widely read by mental health consumers and advocates, as well as in the Daily News and El Diario and HHC emergency rooms and admissions units.[2]

Under Federal Rule of Criminal Procedure 23(b)(2), the process of notice is left to the discretion of the district court, so long as that decision is reasonable in light of the particular circumstances. Courts strongly favor individualized notice, even when it will require considerable effort and time to find the appropriate records. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974) ("there is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs"); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978) (notice by mail necessary even though it required sorting through up to 300,000 punch cards and would cost an estimated $16,000 in 1973 dollars); *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1099 (5th Cir. 1977) (even though the record search for the information on class members would be expensive, time consuming and "cannot be

---

[2] In the June 1 order, this Court approved the placement of such notices in HHC emergency rooms and admissions units as sufficient notice to all individuals who will be evaluated for commitment in the future, since they will pass through these areas.

made with push-button ease, its advantages bring the effort required within the range of reasonableness," especially considering the size of the class, which consisted of 1.7 million members). However, in certain cases, courts have found that individualized notice is not required where identifying the class members would require an expensive and burdensome search and the resulting information would be unreliable and incomplete. See *Carlough v. Amchem Prods. Inc.,* 158 F.R.D. 314, 328 (E.D.Pa. 1993) (individualized notice to unknown class members not required where parties had proposed extensive alternative notice plan and the list to be produced, after much effort, would produce at best a list of names and outdated addresses that represented only a fraction of the class and many non-members); *In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534, 546 (N.D.Ga. 1992) (distinguishing the case from *Eisen* and finding individualized notice not required where notice to a list which would not definitely result in notice to a substantial number of class members and "would most likely confuse the recipients and encourage claims by non-class members"); *see also In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d at 1099 (noting that "in every case, reasonableness is a function of anticipated results, costs, and amount involved" and that a

search "may be omitted only if its costs will exceed the anticipated benefits").

Given the particular circumstances involved in this case, individualized notice would not be the most reasonable way of informing the members of the class and the costs would exceed the anticipated benefits. First, it is likely that any records pulled by HHC would not contain sufficiently current information to inform a large percentage of the class members, due to the mobility of the patient population. As a result, a search would require a significant investment of time and money for a limited return.[3] Second, obtaining these records would delay the resolution of this action for another year. Third, individualized notice might well jeopardize the privacy interests of the patients who have allegedly been harmed by HHC's conduct, especially considering the fact that, due to their mobility, many may no longer live at the addresses to which the notice is mailed.[4] As a result, the alternative method of notification by publication appears advisable.

---

[3] The settlement requires HHC to implement new procedures and training. While the parties have not indicated what the cost of implementation would be, it would appear that $250,000 would be a significant increase in the total cost of settlement for HHC.

[4] For this reason, even if some of the records can be easily obtained, it is not advisable to require individualized notice even to those class members. I have identified no cases which deal with similar concerns over privacy.

However, although the parties propose to send notice out in mid-December and schedule a fairness hearing at the end of January, some additional to respond should be allowed, given the nature of the notice and the nature of the class population. Further, the notice should be posted in the publications more than once during that period to ensure that the relevant population is given an opportunity to become aware of the settlement.

In addition, in this Court's previous order, the parties were required to make minor modifications to the notice provisions to (1) inform class members that they will be bound by the settlement; (2) inform class members that the lawsuit does not provide damages but only means to correct allegedly unlawful behavior; and (3) indicate how individuals may opt-out or object. The most recent version of the notice incorporates these modifications except with regard to the option of "opting-out" of the class. With the forgoing changes, the notice is approved.

## CONCLUSION

For the reasons set forth above, notice by publication is approved. The parties are directed to publish notice of the settlement pursuant to the terms set forth in the accompanying order.

SO ORDERED.

Dated :   Brooklyn, New York
          November 22, 2006

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge