UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Gregory B. Monaco, *etc.*, *et ano.*,

               Plaintiffs,           CV-98-3386 (CPS)

     - against -              MEMORANDUM
                                 OPINION AND
                                 ORDER

Sharon Carpinello, *etc., et alia*,

               Defendants.

----------------------------------------X

SIFTON, Senior Judge.

Plaintiffs Gregory B. Monaco, on behalf of himself and similarly situated individuals facing civil commitment, and the Mental Disability Law Clinic of Touro Law Center ("the Clinic") bring this class action for declaratory and injunctive relief against the following defendants: Sharon Carpinello, in her official capacity as Acting Commissioner of the New York State Office of Mental Health ("OMH"); Catherine Cahill, in her official capacity as Justice of the East Hampton Town Justice Court, on behalf of herself and all other local criminal court judges in New York State; Benjamin Chu, in his official capacity as the Director of the New York City Health and Hospitals Corporation ("HHC"); Mark Sedler, in his official capacity as Chairman of the Department of Psychiatry at University Hospital of the State University at Stony Brook; Kenneth Skodnek, in his official capacity as Chairman of Psychiatry at Nassau University

Medical Center ("NUMC"); Arnold Licht, in his official capacity as Director of the psychiatric unit of Long Island College Hospital; Alfred Tisch, in his official capacity of Sheriff of Suffolk County; and Martin Horn, in his official capacity of Commissioner of the New York City Department of Corrections.[1]

Plaintiffs allege violations of the Fourth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, as well as state law claims for false imprisonment negligence, and medical malpractice. As amended, the complaint contains two major components: 1) a challenge to the constitutionality of the practices of Cahill, Horn, and Tisch in unnecessarily keeping confined individuals found incompetent to stand trial for minor felonies and misdemeanors and those awaiting such a determination; 2) a challenge to the constitutionality of the procedures used by Chu, Sedler, Skodnek, and Licht to involuntarily hospitalize individuals deemed mentally ill.

Previously, I found it appropriate to certify a plaintiff subclass of all individuals in the counties of Kings, Queens, Richmond, Nassau, and Suffolk who are subject to civil commitment

---

[1] In a previous decision, this Court dismissed the claims against Licht and granted summary judgment in favor of four other defendants. In their fifth amended complaint, plaintiffs reasserted these claims against these defendants in order to preserve their right to appeal this Court's judgment. *See* 6 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 at 560 (2d ed. 1990).

evaluations at facilities operated by the Office of Mental Health or other state entities and local governments (the "Civil Commitment Subclass").[2]

On June 1, 2006 I granted preliminary approval to the proposed settlement between members of the Civil Commitment Subclass who are subject to civil commitment evaluations at facilities operated by the New York City Health and Hospital Corporation and Allan Aviles, as president of the New York City Health and Hospital Corporation (successor to defendant Chu). I also approved the proposed notice, with some modifications. I subsequently approved notice by publication on November 22, 2006 (as amended by my order of December 12, 2006). A fairness hearing was held February 26, 2007, prior to which defendants submitted an affidavit attesting to the fact that they materially complied with this Court's instructions regarding notice.[3] There have been no objections to the proposed settlement. The Court now considers final approval of the proposed class action settlement agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. For the reasons that follow, final approval

_____

[2] I have also certified an "Incompetency Subclass," consisting of all individuals who have been or will be: (1) charged with a minor felony or misdemeanor; (2) evaluated to determine whether they are competent to stand trial; and (3) found by court appointed psychiatrists to lack the capacity to stand trial, and awaiting a determination of the competency issue by the local criminal court, as well as two subclasses of that Incompetency Subclass. Those classes are not parties to this settlement.

[3] The publication of notice in the Daily News was four days later than ordered by the Court, apparently not due to any fault of the parties.

is granted.

## BACKGROUND

The relevant claims for relief read as follows:

Seventh Cause of Action:

As a result of physicians at OMH and HHC operated
facilities, Stony Brook and NUMC certifying individuals
who have been evaluated for civil commitment purposes
as dangerous because the physician believe that such
individuals' clinical condition warrants in-patient
care and treatment, defendants Carpinello, Chu,
Skodnek, Sedler, and Licht are responsible for the
confinement of non-dangerous individuals, which
violates the Fourteenth Amendment to the United States
Constitution and 42 U.S.C. §1983.

Eighth Cause of Action:

By failing to examine and employ significant criteria
related to the likelihood of causing harm when
examining allegedly mentally ill individuals for civil
commitment purposes, physicians at OMH and HHC operated
facilities, Stony Brook and NUMC make clinical
determinations that do not promise some degree of
accuracy and such decisions result in the confinement
of nondangerous individuals, both of which violate the
Fourteenth Amendment to the United States Constitution
and 42 U.S.C. §1983.

Ninth Cause of Action:

By conducting clinical evaluations that frequently do
not last more than five or ten minutes when examining
allegedly mentally ill individuals for civil commitment
purposes, physicians at OMH and HHC operated
facilities, Stony brook, and NUMC make clinical
determinations that do not promise some degree of
accuracy and such decisions result in the confinement
of nondangerous individual [sic], both of which violate
the Fourteenth Amendment to the United States
Constitution and 42 U.S.C. §1983.

Tenth cause of Action:

By failing to apply the statutory criteria of the
provisions of the New York Mental Hygiene Law pursuant
to which the physicians act, physicians at HHC operated
facilities, Stony Brook, and NUMC violated the
procedural component of the Due Process Clause of the
Fourteenth Amendment to the United States Constitution
and 42 U.S.C. §1983.


The plaintiffs and Aviles (successor to defendant Chu) have

agreed to settle these claims for relief. Plaintiffs have

provided a copy of the proposed settlement. It reads as follows:

Definitions:
1. For the purposes of this Stipulation, "psychiatric
emergency staff" refers to any physician assigned to
the psychiatric emergency service at HHC who is
authorized to involuntarily admit patients to HHC
psychiatric units pursuant to article 9 of the New York
Mental Hygiene Law.

Risk Assessment Form
2. HHC agrees to require psychiatric emergency staff to
use a standard form to evaluate patients for
involuntary civil commitment to any HHC facility. This
form shall require psychiatric emergency staff to
document any risk factors for danger to self or others.

3. The parties agree that the Psychiatric Emergency
Department Assessment From annexed hereto as Exhibit A
satisfies the requirements of paragraph 2 above. HHC
may revise this form, except that any revised form must
require psychiatric emergency staff to document any
risk factors for danger to self or others, and
revisions may only be made after 30 days advance notice
to plaintiff's counsel.

Training
4. HHC agrees to provide training for all current
psychiatric emergency staff, and all new psychiatric
emergency staff who begin working at psychiatric
emergency services in HHC hospitals during the term of
this Stipulation, on the following topics: a) the legal
standards for involuntary civil commitment pursuant to

Article 9 of the New York Mental Hygiene Law; b) risk factors relevant to evaluating whether a patient is dangerous to self or others; c) use of the HHC form described in paragraph 2 above; and d) the legal requirements for involuntary medication of patients. The training materials will convey that involuntary civil commitment decisions are legal determinations as well as clinical determinations. The training materials concerning involuntary medication will instruct staff to write involuntary medication orders consistent with the requirements of 14 N.Y.C.R.R. 527.8(c)(1), and will further instruct staff not to write medication orders that authorize the intramuscular administration of psychotropic medication on a "PRN" basis for agitation alone.[4] This training shall be completed within 150 days of the date when this Stipulation is "so ordered" by the Court. HHC will provide plaintiffs' counsel with a copy of the final training materials that are described in this paragraph.

5. HHC agrees to provide additional in-person training for HHC hospital personnel responsible for direct supervision of psychiatric emergency staff, concerning their obligation to ensure that psychiatric emergency staff comply with Article 9 of the Mental Hygiene Law when making involuntary commitment decisions. This training shall be completed within 150 days of the date when this Stipulation is "so ordered" by the Court.

<u>Monitoring</u>
6. Three times during the term of this Stipulation, HHC will provide plaintiffs' counsel with copies of commitment certificates, and the form described in paragraph 2 above, for a systematically selected sample of 25 patients involuntarily committed during the

---

[4] The forcible administration of medicine was not addressed in the complaint in this case. Plaintiff explains it requested access to HHC facilities in order to offer patient's legal services in connection with any wrongful determination of dangerousness. In this Court's December 20, 2002 Memorandum Opinion and Order the Court granted plaintiffs right of access. However, that decision was stayed pursuant to defendants' Rule 23(f) application to the Second Circuit. Accordingly, the Law Center filed a new suit entitled *Mental Disability Law Clinic v. Marcos*, 02-CV-6131, in which the Law Clinic sought access both to offer legal services in connection with any wrongful determination of dangerousness and in connection with any wrongful forcible medication of patients. Thereafter, the Second Circuit denied the defendants' application pursuant to 23(f). That action will be discontinued by the settlement under consideration.

previous three-month period, in the psychiatric
emergency department at each of the following
facilities: Bellevue Hospital Center, Kings County
Hospital Center, and Elmhurst Hospital Center (for a
combined total of 75 patients). The names and other
personally identifiable information concerning
individual patients and their family members and
individual HHC staff members will be redacted from the
files, and the files will not be disclosed by
plaintiffs' counsel to any party other than the Court.
If any such documents are filed with the Court for any
reason they shall be filed under seal. These documents
will provided at the end of the ninth month, fifteenth
month and twenty-second month after this Stipulation is
"so ordered" by the Court.

7. HHC and plaintiffs' counsel shall review the
documents provided pursuant to paragraph 6 above within
30 days of the date when the documents are produced.
The purpose of this review will be to ensure that
psychiatrists are appropriately using the form
described in paragraph 2 above to assist them in making
commitment determination. The parties agree that this
review will <u>not</u> involve formally challenging in Court
the propriety of involuntary commitment decisions that
were made in individual cases.

8. After the parties complete each review described in
paragraph 7 above, plaintiffs' counsel may request a
meeting with HHC to discuss the results of the review.
When plaintiffs' counsel requests such a meeting,
plaintiffs' counsel shall send HHC's counsel a written
summary of the issues that plaintiffs' counsel would
like to discuss at the meeting. The meeting shall take
place a reasonable time after HHC's counsel receives
the written summary. For defendants, any such meeting
would be attended by one or more attorneys from the
Office of the Corporation Counsel; one or more
attorneys from HHC's Office of Legal Affairs; and at
least one supervisory or managerial staff member at HHC
who: a) is involved in training or supervising
psychiatric emergency staff at Bellevue Hospital
Center, Kings County Hospital Center, or Elmhurst
Hospital Center; b) works in a managerial position at
HHC's central office in the Office of Behavioral Health
or any successor office that is involved in
implementing settlement; or c) is involved in
corporate-wide training relating to this settlement. At

any such meeting, the parties would discuss the results
of the review, including whether any corrective action
may be appropriate. On consent of plaintiffs and HHC,
any such meeting could take place at the Courthouse and
involve the Magistrate Judge assigned to this case, on
a date convenient for the Court.

<u>Jurisdiction</u>
9. This Court shall retain jurisdiction over this
Stipulation for the purposes of modification and
enforcement until two years after the date on which it
is "so ordered" by the Court. At the end of that time,
the Court's jurisdiction shall end, the terms of this
Stipulation shall expire, and all claims in this action
against HHC shall be dismissed with prejudice. Nothing
in this paragraph shall be construed as a limitation on
plaintiff's right to move to enforce the stipulation in
accordance with ¶¶ 12 and 13 of this Stipulation, or of
the parties' right to negotiate an extension of the
agreement on consent of all parties to the Stipulation.

10. During the time when this Stipulation is in effect,
plaintiffs agree not to file any new litigation seeking
systemic relief against HHC or any of its hospitals
pertaining to the subject matter of this action.
Nothing in this Stipulation shall be construed as
precluding any party from bringing an action or
proceeding seeking systemic relief against HHC or any
of its hospitals concerning the issue of involuntary
medication at HHC.  Plaintiff Mental Disability Law
Clinic agrees that, if it is contemplating commencing
any such action, it will provide counsel for HHC with
at least 60 days prior notice concerning the
contemplated action. Nothing in this Stipulation shall
be construed as preventing plaintiff Mental Disability
Law Clinic from filing a new action against HHC for
systemic declaratory, injunctive or other equitable
relief based on any claims arising after the expiration
of the terms of this stipulation.

11. Plaintiffs shall discontinue with prejudice the
action pending in this Court titled <u>Mental Disability
Law Clinic v. Marcos</u>, 02-CV-6131 (CPS). A copy of the
stipulation of discontinuance that shall be filed with
the Court is attached as Exhibit B.

<u>Enforcement</u>
12. During the term of this Stipulation, plaintiffs may

move to enforce Stipulation only if plaintiffs have
evidence that HHC has a) substantially failed to
require psychiatric emergency staff to use the form
described in paragraph 2 above; b) substantially failed
to complete the training required by paragraphs 4 and 5
above; or c) substantially failed to provide the
documents, complete the review, or participate in the
meetings described in paragraphs 6 through 8 above.
Should plaintiffs move to enforce the Stipulation,
defendants shall be considered to be in compliance with
the Stipulation unless plaintiffs establish that
defendants have substantially failed to comply with
these requirements. Non-systemic violations of these
requirements shall not form a basis for a motion for
enforcement or a finding of non-compliance. In the
event the Court finds that HHC has substantially failed
to comply with any of these requirements, it may grant
relief that is appropriate to cure such non-compliance.
Any such relief shall be narrowly drawn, and extend no
farther than necessary to cure the non-compliance.

13. At least sixty (60) days prior to making any motion
to enforce this Stipulation pursuant to paragraph 12 or
this Stipulation, plaintiffs shall provide HHC with
written notice of the nature, specifics and evidence of
the claimed violation(s) of the Stipulation in order to
give HHC an opportunity to cure such alleged
violation(s). The parties shall thereafter attempt to
resolve the allegation(s) of non-compliance within
sixty (60) days of plaintiffs' counsel providing
written notice consistent with the terms of this
paragraph, plaintiffs may filed a motion in accordance
with paragraph 9 of this Stipulation.

General Provisions
14. Nothing contained herein shall be deemed to be an
admission by HHC or the City of New York of liability
or the truth of any of the allegations set forth in the
complaint, or that they have in any manner or way
violated plaintiffs' rights, or the rights of any other
person or entity, as defined in the constitutions,
statutes, ordinances, rules or regulations of the
United States, the State of New York, the City of New
York, or any other rules, regulations or bylaws of any
department or subdivision thereof.

15. This Stipulation is solely for the purposes of
settlement, and does not reflect the positions of the

parties in any other judicial or administrative action or proceeding. This Stipulation shall not be admissible in, nor is it related to, any other judicial or administrative action or proceeding or settlement negotiations, except that any party may use this Stipulation in connection with any subsequent action or proceeding brought o enforce this Stipulation.

16. Notwithstanding the provisions of this Stipulation, HHC reserves the right to implement, change, or otherwise alter or amend the procedures and requirements of this Stipulation if required by intervening changes in federal statute or regulation or State statute or regulation which are inconsistent with the terms of this Stipulation. HHC shall provide counsel for plaintiffs with written notification, by facsimile or electronic mail with acknowledgment or receipt, of a required change at least 30 days prior the commencement of implementation, unless HHC is required to commence implementation of such a required change in less than thirty (30) days. If HHC is required to commence implementation of a required change in less than thirty (30) days, HHC shall provide such notice no later than seven (7) working days after learning thereof. Plaintiffs shall have the right to challenge whether the change is required by federal or State statute or regulations. Notwithstanding the above, HHC shall not be precluded from relying on a change in federal statute or regulation or State statute as the basis for defending against a motion to modify and/or extend the terms of this Stipulation

17. The City of New York further agrees to pay reasonable attorneys' fees incurred in connection with litigating plaintiffs' claims against HHC. Plaintiffs' counsel shall provide counsel for HHC with all time records supporting plaintiff's claim for attorneys' fees, and the parties shall attempt to resolve this issue through good faith negotiations. If the parties are unable to reach agreement on the amount of attorney's fees, plaintiffs may move in Court for reasonable attorneys' fees incurred in connection with litigating plaintiffs' federal claims against HHC, HHC may oppose the amount of fees sought in plaintiff's motion, and the Court shall decide the motion.

18. Notwithstanding the use of terms such as "approved" or "so ordered," the terms and conditions of this Stipulation shall be deemed effective, and the parties' obligations, rights and responsibilities shall commence, only when the Court's approval of this Stipulation in accordance with Rule 23(e) of the Federal Rules of Civil Procedure is final by appeal.

19. This Stipulation is final and binding upon plaintiffs and HHC, their successors and assigns.

Plaintiffs have also provided a copy of the notice, published pursuant to the Court's preliminary approval order.

A class action lawsuit has been filed on behalf of all individuals in the counties of Kings, Queens and Richmond who are subject to civil commitment evaluations at New York City Health and Hospital Corporation ("HHC") hospitals, and also on behalf of the Mental Disability Law Clinic, Touro Law Center, which represents individuals facing involuntary hospitalization. The lawsuit challenges the way that HHC doctors examine patients to determine whether or not they should be hospitalized against their will. The lawsuit asserts that doctors do not really look at whether a patient is dangerous and will hospitalize patients who have a mental illness against their will when they are not dangerous, in order to treat them.

A settlement has been reached in this lawsuit. The settlement provides that doctors will receive training about how to examine whether or not a patient is dangerous. The settlement will also require doctors to look at specific items to help determine whether or not a patient is dangerous.

If you have any questions about this lawsuit or the settlement you can contact one of the lawyers working for the plaintiff: William Brooks, telephone number (631) 421-2244, extension 331.

A hearing will be held before the Honorable
Charles P. Sifton on [February 26, 2007]. It will
be held at the United States Courthouse at 225
Cadman Plaza East, Brooklyn, NY 11201, courtroom
[6A]. The purpose of this hearing is to determine
whether or not the settlement is fair and the
court should approve the settlement. If you do not
approve of the settlement you can appear on the
date and time of the settlement hearing to state
your objections to the court. You may also submit
objections to Judge Sifton in writing on or before
the hearing date.

The parties posted notice in English and Spanish in the

psychiatric emergency rooms and admission units of the HHC

facilities covered by this lawsuit.  The parties also

published the notice in the Daily News, El Diaro, Salud

Mental (the Spanish language edition of Mental Health News)

and New York City Voices.

**DISCUSSION**

Under Rule 23(e) of the Federal Rules of Civil

Procedure, class actions "shall not be dismissed or

compromised without the approval of the court, and notice of

the proposed dismissal or compromise shall be given to all

members of the class in such manner as the court directs."

Fed. R. Civ. P. 23(e).

"The central question raised by [a] proposed settlement

of a class action is whether the compromise is fair,

reasonable, and adequate." *Weinberger v. Kendrick*, 698 F.2d

61, 73 (2d Cir. 1982).  To determine whether this standard

has been met, the court must "compare the terms of the compromise with the likely rewards of litigation." *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985)(citations omitted).  In evaluating the substantive fairness of a proposed settlement, the Court is guided by the nine factors initially enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted); *see also In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992)(applying *Grinnell* factors); *In re Warner Communications*, 618 F. Supp. at 740-741(same).  The court must also examine the negotiating process that gave rise to the settlement to determine if it was achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests. *See*

*id*. at 741; *see also D'Amato*, 236 F.3d at 85 ("The District
Court determines a settlement's fairness by examining the
negotiating process leading up to the settlement as well as
the settlement's substantive terms.").

*1) Complexity, Expense and Likely Duration of the Litigation*

These claims would be complex to litigate and would
require the plaintiffs to prove that HHC physicians make
pretextual assessments of dangerousness and that HHC
confines non-dangerous individuals.  Proof would require the
introduction of expert testimony.  As I stated upon granting
preliminary approval, I have little doubt that continued
litigation of these claims would require the needless
expenditure of resources in light of a settlement providing
for substantially all that plaintiff demanded.  Accordingly,
this factor weighs in favor of settlement.

*2) Reaction of the Class*

The legal protections conferred on the class by the
settlement correspond closely with the relief sought in the
complaint and the equitable relief they sought and would
likely have received had they been successful at trial.  No
class member has objected to this settlement.  Moreover, the
settlement on a suit which seeks only injunctive or

declaratory relief does not bar individual members from bringing subsequent claims for damages.  This factor therefore weighs in favor of settlement.


*3) Stage of the Proceedings*

The stage of the proceedings and the amount of discovery the parties have conducted is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y., 1997).  Because this litigation has been pending for eight years, motions to dismiss and for class certification have been litigated and the parties have undergone substantial discovery, this factor weighs in favor of settlement.


4) *Risks of Establishing Liability*

"In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate [relief] against the inherent risks of litigation." *In re Medical X-Ray*, 1998 U.S. Dist. LEXIS 14888, at *11 (E.D.N.Y. 1998).  Since the settlement gives the plaintiffs substantially the relief which they would have received if

they were successful at trial while obviating the risk that
plaintiffs might be unable to prove that defendant's
practices violate their right to due process, this factor
weighs in favor of settlement.


*5) Risks of Establishing Damages*

This factor is not relevant in this case since
plaintiffs seek no monetary damages.


*6) Risks of Maintaining the Class Action through the Trial*

Having previously approved the class, I see no reason
why it would not be maintained through trial.  Accordingly,
this factor weighs against settlement.


*7) Ability of Defendants to Withstand Greater Judgement*

This factor is not relevant in this case since
plaintiffs seek no monetary damages.  Nor does it appear
likely that the administrative costs of complying with the
settlement will substantially exceed the costs of further
litigation.


*8) Range of Reasonableness of the Settlement Fund in Light
of the Best Possible Recovery*

This factor is not relevant in this case since

plaintiffs seek no monetary damages.


9) *Range of Reasonableness of the Settlement Fund to a
Possible Recovery in Light of all the Attendant Risks of
Litigation*

This factor is not relevant in this case since
plaintiffs seek no monetary damages.


10) *Arms Length Negotiations*

In the Preliminary Approval Order, I concluded that the
Settlement Agreement was both substantively and procedurally
fair.  The parties litigated motions to dismiss and for
class certification and engaged in lengthy and comprehensive
negotiations surrounding this settlement.  Plaintiffs'
attorney fees will be negotiated and determined by the Court
if necessary at later date.  There is no monetary recovery
at issue here and therefore no reason to suppose that the
named plaintiffs to benefit from the settlement at the
expense of the interests of the rest of the class.  There
appears to be no collusion and I conclude that the
negotiations were conducted at "arms-length."

Since nearly all the relevant factors weigh in favor of
settlement and the settlement substantially conforms with
the relief plaintiffs could have been awarded after trial, I

find that the settlement is fair, reasonable, and adequate.

## Conclusion

For the reasons set forth above, the settlement is approved. The Clerk is directed to transmit a copy of the within to all parties.


SO ORDERED.

Dated :   Brooklyn, New York
          April 19, 2007


                    By: /s/ Charles P. Sifton (electronically signed)
                                  United States District Judge