UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREGORY B. MONACO, on behalf of himself
and other similarly situated individuals, *et al.*,

                              Plaintiffs,                  REPORT AND
                                                                      RECOMMENDATION

   -against-

                                                                                 98 CV 3386 (NGG) (RML)

MICHAEL HOGAN, Ph. D., in his official
capacity as Commissioner of the New York State
Office of Mental Health, *et al.*,

                                Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiff Gregory Monaco ("Monaco") filed the initial complaint in this federal question action on May 5, 1998. Plaintiffs, who now include the Mental Disability Law Clinic of Touro Law School ("The Mental Disability Law Clinic") and a state-wide class of individuals found to be incompetent to stand trial, moved for leave to file an amended complaint. Defendants Michael Hogan, Commissioner of the New York State Office of Mental Health ("OMH"), and Dr. Mark Sedler, Chairman of the Department of Psychiatry in the School of Medicine at the State University at Stony Brook (collectively, the "state defendants") oppose plaintiffs' motion. For the reasons set forth below, I recommend that plaintiffs' motion be granted in part and denied in part.

## BACKGROUND AND FACTS

        The court assumes familiarity with this case. Briefly, plaintiffs brought the underlying action to challenge the practices and procedures to which mentally ill defendants deemed incompetent to stand trial in New York have been subject. Plaintiffs subsequently filed

an amended complaint to challenge the adequacy of civil commitment evaluations at facilities that OMH operates and regulates. Between May 1998 and December 2003, plaintiffs amended the complaint five times, adding new defendants and/or claims. Plaintiffs alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment, and 42 U.S.C. § 1983, as well as negligence and false imprisonment against non-state defendants under state law.

On March 12, 1999, the Honorable Charles Sifton, United States District Judge, certified Monaco as the representative of a plaintiff class of all individuals who have been or will be (1) charged with a minor felony or misdemeanor, (2) evaluated to determine whether or not they are competent to stand trial, and (3) found by court-appointed psychiatrists to lack the capacity to stand trial and awaiting a determination of the competency issue by the local criminal court. Monaco v. Stone, 187 F.R.D. 50, 63 (E.D.N.Y. 1999). In 2002, Judge Sifton further certified two subclasses. Monaco v. Stone, No. 98 CV 3386, 2002 WL 32984617 (E.D.N.Y. Dec. 20, 2002). In 2005, after extensive delays in the discovery process, this court suggested a case management plan that involved initially focusing discovery on two OMH facilities. In accordance with the plan, discovery began in February 2006. Although the parties have concluded discovery on the initial two OMH facilities, discovery is ongoing for three other OMH facilities.

Plaintiffs now seek leave to file a Sixth Amended Complaint in order to add the following additional claims ("the additional claims") against the state defendants: (a) two claims of impermissible stereotyping under the Americans with Disabilities Act ("ADA"); (b) a claim under the most integrated setting mandate of the ADA; and (c) five pendent state law claims.

The state defendants oppose the amendments as untimely, prejudicial, and futile.

**DISCUSSION**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Nevertheless, a motion to amend should be denied if there is an "apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). The decision to grant or deny leave to amend is within the court's discretion. See Green v. Dep't of Correction, No. 97 CV 6652, 1999 WL 710782, at *2 (S.D.N.Y. Sept. 13, 1999); General Elec. Capital Fin., Inc. v. Bank Leumi Trust Co., No. 95 CV 9224, 1999 WL 33029, at *4 (S.D.N.Y. Jan. 21, 1999); Brown v. R.D.F. Transp. Corp., No. 95 CV 2056, 1998 WL 713807, at *1 (E.D.N.Y. Oct. 7, 1998).

In evaluating proposed amendments, the court typically applies the same standards as those governing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (the court need not allow an amendment "if it does not state a claim upon which relief can be granted"), superseded on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993); Mercury Time, Inc. v. Gruen Mktg. Corp., No. 97 CV 0020, 1999 WL 342299, at *11 (E.D.N.Y. May 26, 1999) (same). Here, the state defendants oppose plaintiffs' motion on the grounds that the amendments are untimely, prejudicial, and futile. I will address each argument in turn.

    A. Undue Delay

Plaintiffs argue that their motion to amend is timely, as it was unclear until the Second Circuit's decision in <u>Bolmer v. Oliveira</u>, 594 F.3d 134 (2d Cir. Feb. 8, 2010), that they had causes of action under the ADA. According to plaintiffs, prior to the decision in <u>Bolmer</u> and as a result of <u>Garcia v. S.U.N.Y. Health Scis. Ctr.</u>, 280 F.3d 98 (2d. Cir. 2001), Second Circuit authority suggested that a litigant could bring claims against the state under Title II of the ADA only in instances of irrational discrimination. Plaintiffs assert that the decision in <u>Bolmer</u>, which allowed an impermissible stereotyping claim to go forward, alerted them to the prospect of adding such a claim, as well as similar ones.

The state defendants, on the other hand, argue that plaintiffs have unreasonably delayed in seeking to amend and "unquestionably knew" that they could assert the proposed ADA claims sooner. (Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint, dated July 22, 2010 ("State Defs.' Mem."), at 2.) They argue that, even prior to <u>Bolmer</u>, case law made clear that Title II ADA claims could be maintained against a state and that plaintiffs knew of the possibility of a claim based on violation of the ADA's integration mandate because William M. Brooks, plaintiffs' counsel in this case, made such a claim in <u>Mental Disability Law Clinic v. Hogan, et al</u>, No. 06 CV 6320. (<u>Id.</u> at 15–16.)

I find the state defendants' undue delay arguments unpersuasive. While plaintiffs could have asserted the ADA claims sooner, the claims have arguably become more viable in light of the Second Circuit's decision in <u>Bolmer</u>, which suggests that stereotyping can be a violation of the ADA. <u>See generally</u> <u>Bolmer</u>, 594 F.3d 134 (affirming denial of summary judgment for a claim of Title II ADA violation where the plaintiff alleged discrimination based on impermissible stereotyping). Thus, it is understandable that the <u>Bolmer</u> decision prompted

plaintiffs to reevaluate their litigation strategy. Because plaintiffs promptly moved to amend the complaint following the decision, I find the motion timely.

B. Unfair Prejudice

The state defendants also argue that the proposed amendment would be prejudicial to them because the proposed new claims will require them to complete new discovery. (See State Defs' Mem. at 18.) According to the state defendants, if the new claims go forward, it will take them considerable time—as much as a year or two—to investigate and develop possible defenses to these claims. (Transcript of Oral Argument, dated Sept. 22, 2010 ("Oral Argument Tr."), at 51.) This is so because, the state defendants claim, up to this point in the litigation, their focus has been on whether doctors who evaluated the class members had evidence that the patient was dangerous and not on whether there were alternative options for treatment besides civil commitment. (Oral Argument Tr. at 68.) For this reason, the state defendants claim they will have to newly explore the extent to which OMH psychiatrists conducting involuntary commitment evaluations determine whether individuals can live nondangerously in community settings. (Declaration of Michael E. Peeples, dated July 16, 2010 ("Peeples Decl."), ¶ 32.) As part of that inquiry, the state defendants will purportedly have to examine the alternative services available at each OMH facility and determine whether any such services would be suitable for an individual patient. (Oral Argument Tr. at 69.) Defendants further argue that to defend against the impermissible stereotyping claim, their experts will likely have to compare the evaluations and treatment of individuals found incompetent to stand trial with those of mentally ill individuals who were not found incompetent to stand trial, in order to show that there is no animus towards those individuals found incompetent to stand trial.

(Peeples Decl. at 10.)

Having reviewed the pleadings, I respectfully disagree with the state defendants regarding prejudice. While some additional discovery about the availability of outpatient services from various providers may be required, I do not believe that the proposed additional claims will greatly transform or expand the scope of discovery. This is so for two reasons: (1) earlier pleadings highlight plaintiffs' expansive view of the dangerousness inquiry, and defendants have already been on notice about the possible relevance of community support to that inquiry; and (2) doctors are mandated to consider alternative options for treatment in evaluating whether someone is sufficiently dangerous for involuntary civil commitment to be appropriate.

As stated above, the state defendants claim that up to this point in the litigation, their focus has been on whether doctors who evaluate the class members had evidence that the patient was dangerous and not on whether there were alternative options for treatment. This may be so, but I find that defendants were on notice that plaintiffs viewed community support and the availability of alternative treatment to be important elements in assessing risk. Over several paragraphs of their Fifth Amended Complaint, plaintiffs set out what they perceive as important criteria for assessing the threat of harm that individuals pose to themselves and others. (See Fifth Amended Compl. ¶¶ 87–89.) These factors include the availability of personal support (id. ¶¶ 87, 90), the patient's marital status (id. ¶ 88), the patient's compliance with past clinical intervention (id. ¶ 87), and the patient's ability to live independently (id. ¶ 89). Given how these factors all relate to the individual's community support, the state defendants were certainly on notice that plaintiffs had a wide view of what a dangerousness inquiry should include, and that

such a view constituted something akin to whether individuals could receive outpatient support in order to live nondangerously in community settings.

Moreover, New York's statutory framework for involuntary commitment supports this expansive view of what should be involved in a dangerousness inquiry. For example, New York Mental Health Law § 9.27(d) imposes on certifying physicians a duty to consider less restrictive alternatives to hospitalization before ordering an involuntary commitment. In <u>Project Release v. Prevost</u>, 551 F. Supp. 1298 (E.D.N.Y. 1982), <u>aff'd</u>, 722 F.2d 960 (2d Cir. 1983), this court granted summary judgment to the defendants on a Due Process challenge to New York's involuntary civil commitment scheme because it believed safeguards like § 9.27(d) would prevent the wrongful commitment of nondangerous individuals. The Second Circuit affirmed the district court's decision because it found, as the district court had, that "'[t]he New York involuntary commitment procedures . . . do not operate to permit the confinement of the nondangerous mentally ill,' but serve to commit only persons who could not sustain themselves in the community." <u>Project Release v. Prevost,</u> 722 F.2d 960 (2d Cir. 1983) (quoting <u>Project Release</u>, 551 F. Supp. at 1304). Because of the statutory scheme and case law, it is clear that patients' ability to live safely in the community with the help of family or other assistance must be considered when determining whether or not a patient presents a risk of harm to self or others. As a result, the additional ADA claims are not a significant departure from the existing pleadings and do not prejudice the state defendants in their defense of the case.[1]

---

[1] It bears noting that the stereotyping claim is a variation on a central tenet of plaintiffs' case since its inception, that is that defendants evaluated and treated individuals differently, according to whether they had been found incompetent to stand trial. Thus, defendants should not be surprised that comparisons of the evaluations of individuals who had been found
(continued...)

C. Futility

Because the state defendants did not raise the issue of futility with respect to the three ADA claims, neither will this court. The state defendants, however, argue that the proposed pendent state law claims are futile. The state defendants are correct that these are not claims "upon which relief can be granted" because the Eleventh Amendment bars this court from hearing them.

The Eleventh Amendment bars federal courts from granting injunctive relief against violations of state law by state officials. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. . . . [T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction."); see also Dube v. State Univ. of N.Y., 900 F.2d 587, 595 (2d Cir. 1990). All five of the claims in plaintiffs' proposed new complaint seek to enjoin state officials from violating state law. (Proposed Sixth Am. Compl. ¶¶ 235–248.)

Plaintiffs argue that after Bolmer, state law might serve as a basis for injunctive relief against the state officials. (Declaration of William M. Brooks, dated Jun. 23, 2010 ("Brooks Decl."), ¶ 13.) However, I find no grounds for this conclusion. While Bolmer holds that Congress validly abrogated states' Eleventh Amendment immunity where the same conduct by the defendant violates both Title II and substantive due process, see Bolmer, 594 F.3d at 149, the case does not address pendent state law claims or Pennhurst. Therefore, plaintiffs'

---

[1](...continued)
incompetent to stand trial with those of individuals who had not would be an issue in this litigation.

conclusion that Bolmer casts doubt on Pennhurst is at least premature. Plaintiffs' state law claims are futile and leave to amend the complaint to include them should be denied.[2]

## Conclusion

For the above reasons, I respectfully recommend that plaintiffs' motion for leave to file an amended complaint be granted in part and denied in part. I recommend that plaintiffs be permitted to add the three additional ADA claims, but not the proposed pendent state law claims. I further recommend that plaintiffs be precluded from further amending the complaint for the duration of the case. Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Garaufis and to my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

Dated: Brooklyn, New York
       October 26, 2010

                                         Respectfully submitted,


                                         _____/s/_____
                                         ROBERT M. LEVY
                                         United States Magistrate Judge

---

[2] The state defendants also argue that plaintiffs' proposed fourteenth cause of action, which asserts that the Commissioner violates New York Mental Health Law § 9.27 by failing to determine whether individuals remanded under CPL § 730.40 can live nondangerously in the community, is futile because there is no private cause of action to remedy a violation of it. (Peeples Mem. at 24.) Because the Eleventh Amendment bars this claim, like the other state law claims, it is unnecessary to reach this issue.